UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-CV-68-KKC

NORMAN DAVID SOMERVILLE                                    PETITIONER

VS:                      **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT, ET AL.                                RESPONDENTS

Petitioner Norman David Somerville is confined in the Federal Correctional Medical Center which is located in Lexington, Kentucky ("FMC-Lexington"). On February 27, 2009, Somerville filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 [Record No. 2]. Somerville paid the $5.00 filing fee [*Id*.].

<u>CLAIMS ASSERTED IN THE § 2241 PETITION</u>

Somerville claims that his right to due process of law, guaranteed by the Fifth Amendment of the United States Constitution, has been violated by the Bureau of Prisons ("BOP") and, specifically the staff of FMC-Lexington.   Somerville wants to be placed in a Residential Re-entry Center ("RRC") located in North Carolina, not a more restrictive a more restrictive Comprehensive Sanction Center (" CSC")  located in Michigan.  Somerville seeks an emergency Order from this Court which would direct the BOP to immediately order him to be placed in an RRC located in North Carolina.[1]

Somerville claims that in denying him placement in an unrestricted RRC in North Carolina, FMC-Lexington staff violated the Ex Post Facto Clause of the United States

---

[1]      "RRCs" were previously known as Community Corrections Centers ("CCC's)."

Constitution, Art. I, § 10, cl.1.  Somerville argues that although he was sentenced in 2005, the

prison staff improperly applied the provisions of the Second Chance Act of 2007, Pub. L. No.

110-199, 122 Stat. 657, to him in 2008 when the issue of his pre-release custody arose.

The Second Chance Act of 2007, enacted on April 9, 2008, amended 18 U.S.C. § 3624(c)

to "authorize[] the BOP to consider placing an inmate in an RRC for up to the final 12 months

of his or her sentence, rather than the final six months that were available pre-amendment."

*Montes v. Sanders*, 2008 WL 2844494, at *1 (C.D. Cal. July 22, 2008).[2]

<u>NAMED RESPONDENTS</u>

The named respondents are: (1) Stephen Dewalt, the warden of FMC-Lexington, and (2)

Marvin S. Pitt, Housing Unit Manger at FMC-Lexington.

---

[2]

In accordance with the Act, on April 14, 2008, the BOP issued an interim policy memorandum stating that the "'categorical timeframe limitations on prerelease community confinement' found in 28 C.F.R. §§ 570.20 and 570.21 . . . 'are no longer applicable and must no longer be followed.'"*Id.* (citation omitted).

On October 21, 2008, the BOP issued an interim rule "revis[ing] current regulations on pre-release community confinement in [28 C.F.R. § 570(b)] to conform with the requirement of the Second Chance Act." 73 Fed. Reg. 62440, 62441 (Oct. 21, 2008). In addition, the interim rule specifies that the decision to place an inmate in pre-release community confinement will be "determined on an individual basis" and according to the factors listed in 18 U.S.C. § 3621(b). *Id.* That legislation rewrote subsection (c) of § 3624, which formerly read as follows:

"(c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.".

18 U.S.C.A. § 3624.

<u>ALLEGATIONS OF THE PETITION AND SUBSEQUENT FILINGS</u>

Somerville alleges that in the early part of 2008, the FMC-Lexington Unit Team staff designated him for a six-month placement in an RRC effective February 1, 2009.[3] He claims that in November of 2008, the prison rescinded that designation and instead ordered him to be placed in a CSC located in Michigan. Somerville claims that this action was taken in retaliation for his having filed grievances against prison staff members on unrelated matters.

In his initial filing [Record No. 2] Somerville set forth a detailed narrative about the prison's decision to place him in CSC Facility located in Michigan. Somerville described the facility where the BOP intends to place him as "Restrictive Placement" [Record No. 2-2, pp. 3-4]. Somerville seeks a "declaratory finding" that "prisons staff acted in retaliatory manner in stopping Relocation Request and CCC/RRC placement."[Record No. 2, p.9].

On March 5, 2009, Somerville filed a "Motion for Leave to File an Amended § 2241 Petition" [Record No. 4]. Somerville asked to add additional "respondents" and assert additional Fifth Amendment claims relative to adverse decisions rendered by FMC-Lexington staff.

On that same date, Somerville filed a "Motion for Temporary Restraining Order and Motion for Preliminary Injunction" [Record No. 5], seeking the same relief as he sought in his initial filing (immediate transfer to a RRC located in North Carolina).

<u>SOMERVILLE'S CRIMINAL HISTORY</u>

In August of 2004, Somerville pleaded guilty to violating 18 U.S.C. § 922(o)(1) "Possession of a Machine Gun," in the United States District Court for the Western District of

---

[3]

The BOP's website reveals that Somerville's projected release date is August 1, 2009.

Michigan. *See United States of America v. Norman David Somerville*, 1:03-CR-239-01(Hon. Gordon J. Quist presiding) ("the Trial Court").

On March 25, 2005, the Trial Court convicted Somerville of the offense and sentenced him to serve a term of 80 months [*See* Trial Court Docket, Entry No. 97]. Somerville appealed. On August 1, 2006, United States Court of Appeals for the Sixth Circuit entered a lengthy Order affirming Somerville's conviction [*See Id*., Docket Entry No. 157; Mandate at Entry No. 160]. That court later denied Somerville's requests for post-judgment relief [*Id*., Record No. 167 (2/8/07); Mandate at Record No. 169].

DISCUSSION
1. Excessive Documents Filed

Somerville's § 2241 petition (nine pages) is accompanied by over ninety (90) pages of documentation which includes a thirty-page memorandum.[4] As a preliminary matter, Somerville is advised that Fed. R. Civ. P. 8(a)(2) requires that a pleading that states a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See also Vakalis v. Shawmut Corp*., 925 F.2d 34, 36 (1st Cir.1991); *Mangan v. Weinberger*, 848 F.2d 909, 911 (8th Cir.1988).  While a party is entitled to state his claims and arguments, he must observe a reasonable degree of brevity.

In *Barsella v. United States*, 135 F .R. D. 64, 66 (S.D. N.Y. 1991), the district court in New York aptly described the problem with submissions similar to Somerville's submission. "[C]omplaints which ramble, which needlessly speculate, accuse and condemn, and which

---

[4] Somerville's subsequent motions, docketed as Record Nos. 4 and 5, are thirteen pages each.

4

contain circuitous diatribes far removed from the heart of the claim do not comport with these

goals [Fed. R. Civ. P. 8] and this system and must be dismissed (citations omitted)."

The Court would be acting within its rights by dismissing the entire petition as being in

violation of Fed. R. Civ. P. 8(a) and (e).  *See Burton v. Peartree*, 326 F. Supp. 755, 758 (E. D.

Penn. 1971) ("Burton, proceeding pro se, has filed a lengthy and rambling complaint which

contains little more than demands, charges, and conclusions.  The complaint is not a short and

plain statement of the case and flagrantly violates Fed. R. Civ. P. 8.  On this ground alone the

complaint may be dismissed.  *Koll v. Wayzata State Bank*, 397 F.2d 124 (8 Cir. 1968), *United

States ex rel. Holland v. Maroney*, 299 F. Supp. 262 (W. D. Pa.1969))."

The Court must dismiss the instant § 2241 petition for other reasons. Somerville is

advised, however,  that in the event he files future pleadings, the Court will hold him accountable

to the "short and concise" statement required by Fed. R. Civ. P. 8(a) and (e).

2. Failure to Exhaust § 2241 Habeas Claims
A. Judicially Imposed Requirements

The administrative remedies available to inmates confined in BOP institutions are set out

in the Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-.19.  Section 542.13(a)

demands that an inmate first informally present his complaint to the staff, thereby providing them

with an opportunity to correct the problem, before filing a request for an administrative remedy.

If the inmate cannot informally resolve his complaint, then he may file a formal written request

(a BP-9 form) to the Warden.  *See* § 542.14(a).  If the inmate is not satisfied with the Warden's

response, he may appeal (BP-10) to the Regional Director, and, if not satisfied with the Regional

Director's response, the inmate may appeal (BP-11) to the Office of General Counsel.  *See* §

542.15 (a) - (b).

Federal courts require inmates seeking habeas corpus relief to exhaust their administrative

remedies before filing a petition under 28 U.S.C. § 2241.  *Gonzalez v. United States*, 959 F.2d

211, 212 (11th Cir. 1992); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *Little v.

Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981); *Hardwick v. Ault*, 517 F.2d 295, 296 (5th Cir.

1975) ("[T]he federal courts have imposed upon federal prisoners the requirement that they

'exhaust their administrative remedies in accordance with Bureau of Prisons policy...'").

The exhaustion requirement is designed to ensure not only that the agency is given the

opportunity to review its conclusions short of litigation, but also that the district court is

provided a complete record upon which to review the agency's final action.  *See Brice v. Day*,

604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980).  The Supreme Court has held that

in order to satisfy the requirement that administrative remedies be exhausted prior to filing suit,

those remedies must be exhausted properly and within the time frames required by the remedy

process.  *Woodford v. Ngo*, 126 S.Ct. 2378, 2387-88 (2006).

## B. Exhaustion Requirements Applied to Facts

In his § 2241 petition, Somerville claims that he should be excused from pursuing the

administrative exhaustion process because it would be futile.[5]  This request refutes Somerville's

own statement, in which he admitted that he had already begun the exhaustion process on the

RRC placement issue and that the process has not run its course.  Somerville stated as follows:

The warden again confirmed the 180 day placement and says Somerville was

---

[5] The administrative remedy process takes approximately ninety days to complete.

6

reviewed in accordance with the Second Chance Act of 2007. Somerville rebutted the BP-9 Response and appealed to the Regional Director in a BP-10 filing, which as of the date of this Section 2241 Memorandum, has not been responded to."

[Record No. 2-2, p.4].

Somerville filed a BP-9 "Request for Administrative Review" on December 30, 3008. Warden Dewalt denied the BP-9 by "Response" dated January 8, 2009 [Record No. 2-3, p. 27]. Warden Dewalt discussed Somerville's criminal history, his conviction for "Possession of a Machine Gun," his history of access to large amounts of automatic weapons and 1000 rounds of ammunition, and his prior involvement with the Michigan Militia.

Warden Dewalt stated that the BOP has classified Somerville as a high risk pre-release inmate. He explained that placement in the CSC was warranted for the protection of the public, noting that the CSC is designed to meet the needs of high risk pre-release inmates. *Id*. Warden Dewalt therefore upheld the Unit Team's November 18, 2008, recommendation to place Somerville in the CSC located in Michigan. *Id*.

At this time, neither the BOP Regional Office nor the Central Office has issued a ruling on the RRC/CSC issue. Somerville has filed this § 2241 petition prematurely, before the administrative remedy process could run its full course.

Somerville strenuously asserts that his CSC designation is the result of retaliation at the institutional level. The Court concludes that administrative exhaustion of Somerville's claims would not be futile, as it was determined in the case of *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 689 (E.D. Ky. 2004).[6] The BOP Regional Office and the Central Office should be afforded the

---

[6]

*Colton* involved a different set of facts. There, *Colton* had been sentenced prior to the BOP's

opportunity to consider Somerville's argument that retaliation caused him to be placed in a Michigan CSC for his pre-release custody.

The Court will therefore dismiss the instant § 2241 petition without prejudice. Petitioner Somerville may file another petition after the proper BOP officials (the BOP Mid-Atlantic Regional Office and the BOP Central Office) have evaluated his claims and have issued a written response regarding the place and term of Somerville's RRC placement.

### 3. Motion for Preliminary Injunction

Somerville seeks preliminary injunctive relief and/or a temporary restraining order to prevent his CSC placement in Michigan [Record No. 5]. He claims that he will suffer irreparable injury if this cause is not taken up now, rather than later. The Court determines that emergency relief is not warranted.

The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiffs could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*,

---

December 2002 adoption of a more restrictive, less favorable BOP policy regarding RRC placement. As the Court will explain *infra*, the Second Chance Act did not *adversely* impact Somerville. Under 18 U.S.C. § 3621(b)(2) and (3), the BOP has always been allowed to consider the nature of the offense of which the prisoner has been convicted, **and** the prisoner's history and characteristics (such as disciplinary compliance) in evaluating the place and term of pre-release placement.

502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

## A. Evaluation of Factor No. 1

Considering the first factor in relation to this case - - Somerville's likelihood of success on the merits - - the outcome is highly questionable at this stage for several reasons.

First, the Ex Post Facto claim advanced by Somerville lacks merit. Contrary to Somerville's claims, the BOP's current process for *considering* RRC placement (not mandating it) has not become more restrictive as result of application of the Second Chance Act of 2007.[7] The Act is more favorable to prisoners than the prior BOP interpretations and regulations in existence when Somerville was convicted in 2005.[8] Accordingly, to the extent that the prison

---

[7]

On December 20, 2002, the BOP adopted a new policy reflecting the Office of Legal Counsel's position that inmates may only be released to community confinement for the last ten percent of their terms of imprisonment or six months, whichever is shorter. *See id*.

Shortly after the BOP's adoption of this new policy in December 2002, offenders nationwide filed a flurry of lawsuits challenging its validity. The First and Eighth Circuit Courts of Appeals found this 2002 policy unlawful because it limited the BOP's discretion to transfer offenders to a RRC, restricting transfer only to the last 10 % of an offender's sentence or six months, in contravention of the plain meaning of § 3621(b), which grants general authority to the BOP to transfer prisoners at any time during their term of incarceration after an individualized determination of the appropriateness of a transfer based upon certain enumerated factors. *Elwood v. Jeter*, 386 F.3d 842 (8th Cir.2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir.2004).

In response to these decisions, the BOP adopted new rules regulating RRC placement, effective February 14, 2005. Those regulations were challenged and criticized in numerous court decisions and eventually led to the enactment of the Second Chance Act of 2007.

[8]

One court recently explained the impact of the Second Chance Act by stating as follows:

In accordance with the Second Chance Act, on April 14, 2008, the BOP issued an interim policy memorandum on RRC placement considerations. The memorandum states that the "categorical time frame limitations on prerelease community confinement" found in 28 C.F.R. §§ 570.20 and 570.21 (i.e., the ten percent limit that Petitioner challenges in this petition) "are no longer applicable and must no longer be followed." The memorandum further requires that RRC placement decisions be

staff evaluated Somerville's RRC placement under the provisions Second Chance Act of 2007, Somerville has not suffered an additional unexpected punishment and has not otherwise been disadvantaged by any change caused by enactment of the Second Chance Act of 2007. *See Demis v. Lappin*, - - - F.3d - - -, 2009 WL 579280, *4, (6th Cir., March 9, 2009) (Prisoner's habeas challenge to policy of BOP prohibiting transfer to community correctional center (CCC) until at least ninety percent of sentence was served was rendered moot by passage and implementation of Second Chance Act, which rendered prisoner eligible for transfer at any time within final 12 months of sentence).

Third, Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. §3621[9]; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and *Beard v. Livesay*,

---

made on an individual basis with reference to the five-factor criteria set out in section 3621(b). Inmates previously denied RRC placement, such as Petitioner, were to be reconsidered under the standards set out in the memorandum."

*Montes v. Sanders*, 2008 WL 2844494, at *1 (C. D. Cal. July 22, 2008).

[9]

Title 18 U.S.C. § 3621(b), governs the *place* of federal inmates' imprisonment. Summarized, this statute establishes the criteria which the BOP must consider in making a determination as to *where* an inmate will serve his federal sentence, which includes pre-release custody. Section 3621(b) provides as follows:

(b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

(1) the resources of the facility contemplated;

798 F.2d 874 (6th Cir. 1986). This right includes the term and location of confinement. There is

no constitutional or inherent right of a convicted person to be released before the expiration of

a valid sentence.  *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S.

1, 7, 99 S. Ct. 2100 (1979).

The general rule is that the Due Process Clause of the United States Constitution does not

confer any right upon an inmate to any particular custody or security classification.  *Moody v.*

*Daggett*, 429 U.S. at 88; *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976).

Inmates do not have a liberty interest in retaining or receiving any particular security or custody

status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence

imposed ... and is not otherwise violative of the Constitution."  *Hewitt v. Helms, 459 U.S. 460*

*at 468, (1983).*

In short, well- settled law establishes that prisoners have no inherent constitutional right

to placement in any particular prison (such as an RRC), security classification, or housing

---

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

11

assignment.  *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983);  *Meachum v. Fano*, 427 U.S. 215, 225, (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976)*; Bolger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.(Tex.) 1995).  Accordingly, Somerville simply has no due process right, protected by the Fifth Amendment, to be placed in a RRC located in Michigan rather than one located in North Carolina.

Finally, as noted, the record is incomplete absent evaluation of the RRC placement issue by the BOP Mid-Atlantic Office and the BOP Central Office.  Somerville stated in his extensive filings that he has appealed Warden Dewalt's adverse ruling to the BOP Mid-Atlantic Regional Office, yet he is attempting to short-circuit the process by filing this § 2241 petition and a motion for emergency injunctive relief. For that reason, the Court will not at this time counter the BOP's decision to assign Somerville to a CSC in Michigan.[10]

## B. Evaluation of Factor No. 2

As to factor (2) of the preliminary injunction test, Somerville has alleged that he will suffer irreparable injury if he is placed in a Michigan CSC. He bases this on the fact that he had

---

[10]

Several courts, including this Court, have denied requests for injunctive relief filed by § 2241 petitioners dissatisfied with their RRC placement as decided under prior regulations. *See Tunnicliffe v. Bureau of Prisons*, No. 06-CV-49-HRW, 2006 WL 1360802 (E. D. Ky. May 15, 2006) (denying habeas and injunctive relief, holding that there is no protected liberty interest in RRC placement); *Montoya v. Rios*, No. 05-CV-00606-PSF-PAC, 2005 WL 3203813 (D. Colo. Oct.26, 2005) (denying habeas relief, holding that the 2005 regulations are a lawful categorical exercise of the BOP's discretion under 18 U.S.C. § 3621(b)); *Rodriguez v. Fed. Bureau of Prisons*, No. 4:06-CV-12631, 2006 WL 1897296 (E. D. Mich. July 11, 2006) (dismissing very similar petition for failure to exhaust administrative remedies); *Shabazz v. Marberry*, No. 2:06-CV-10922, 2006 WL 1555987 (E. D. Mich. June 5, 2006) *711 (finding a lack of exhaustion but dismissing on the merits because the petitioner's misconduct led to his reduction of time in community confinement).

a prior affiliation with the Michigan Militia and that he provided evidence against the group in his criminal proceeding. This claim fails for two reasons.

First, the Court determines that this claim involves a large degree of speculation of injury on Somerville's part, as his conviction was in March of 2005 and the underlying charges dated back to 2003. Second, when Somerville filed his BP-8 "Request for Informal Resolution" on November 17, 2008 [Record No. 2-3, p.23], he failed to even *mention* that placement in a Michigan CSC would subject him to possible harm by Michigan Militia members [Record No. 2-3, p.23]. On the contrary, Somerville took that opportunity to defend the Michigan Militia and his membership in it, stating as follows:

> "The Michigan Militia is a politically based organization supportive of the U.S. Constitution and the Bill of rights. Their views of the Second amendment have recently been upheld by the U.S. Supreme Court. Membership in the Michigan Militia is not illegal; it is not a criminal organization nor is it designated as a terrorist organization. Your intended sanction  against me and the act of making ths recommendation for **RESTRICTIVE COMPONENT** placement is the act of retaliation for exercise of my First Amendment rights."

[*Id*].

In his subsequent December 4, 2008 "Request for Administrative Remedy," Somerville reiterated his objection to the restrictive nature of CSC placement. In that filing, he continued to defend his past association with the Michigan Militia [Record No. 2-3, p. 25].

As noted, CSC placement involves more restriction than RRC placement would impose. Somerville's various statements suggest that it may be the *restrictive aspect* of the CSC is the real basis of his objection, not his personal safety at the hands of Michigan Militia members.

Finally, Warden Dewalt has noted that because Somerville is a high-risk inmate, the

public's safety might be put at risk if he is not placed in the Michigan CSC. The Court cannot ignore this valid concern in considering Somerville's request to intervene in prison administrative matters and issue emergency relief according to his preferences. The irreparable injury might be to the public if the Warden's concerns are ignored.

As noted, Somerville has no constitutional right to serve his sentence in a facility more to his choosing for any certain amount of time. *See Ogunyale v. Phillips*, 2008 WL 1820652 (N. D. W. Va., April 22, 2008) (Slip Copy) (prisoner is not entitled to a specific amount of time in a halfway house; rather, a prisoner is entitled only to have the BOP consider his application for RRC placement in accordance with the five factors set forth in § 3621(b)).

The Court finds that denying Petitioner Somerville the emergency relief he requests now will not result in *irreparable injury*, which is the legal standard.

## C. Evaluation of Factor Nos. 3 and 4

Finally, as to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987).

The Supreme Court has explicitly rejected heightened judicial scrutiny of prison policies. Rigorous scrutiny, the Court noted, is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." *Thornburgh v. Abbott*, 490 U.S. 401, 409-10, 109 S. Ct. 1874 (1989).

"Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt

14

innovative solutions to the intractable problems of prison administration." *Turner v. Safley*, 482 U.S. at 89.   Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."   *Bell v. Wolfish*, 441 U.S. at 562.

The Court is not convinced that the public interest would be served by interfering with the BOP's discretion in selecting in which state this prisoner will spend the pre-release portion of his federal sentence.

### 3. First and Fifth Amendment *Bivens* Claims

This action, 08-CV-68-KKC, involves a petition for a writ of habeas corpus, and was filed under authority of 28 U.S.C.§ 2241. Section 2241 may be used by a prisoner to challenge decisions affecting the manner in which his sentence is being carried out, such as the computation of sentence credits or parole eligibility.  *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1999).

Somerville has repeatedly alleged that he was denied relocation and RRC Placement in retaliation for having filed prior legal actions against the staff at the prison [Record No. 2, p. 5]. He seeks a declaratory judgment on the issue.   Somerville devoted pages and pages of his supplemental filing [Record No. 2-2] to explain about a prior disciplinary action against him and the alleged opening of his mail to an Idaho print publication, by prison staff, which occurred in December of 2008.

What Somerville is actually asserting is either a claim of retaliation for pursuing a legal claim, under the First Amendment of the United States Constitution, and/or a claim of alleged

15

improper mail opening under the First Amendment of the United States Constitution.  To the extent that Somerville is essentially trying to "weave in" a First Amendment retaliation claim, under the guise of a § 2241 petition, he will not be permitted to do so in this proceeding. Likewise, to the extent that he asserts other First Amendment claims regarding the alleged improper opening of his mail, he may not do so in this § 2241 habeas petition.

According to *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), constitutional claims can only be asserted in a civil action filed under 28 U.S.C. § 1331.  *Martin* dictates that when a prisoner attempts to assert such claims in a § 2441 habeas petition, the district court must dismiss the § 2241 petition without prejudice and the prisoner must then file a proper civil rights action under 28 U. S.C. § 133, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[11]

The construed First Amendment claims are not properly asserted in this § 2241 petition, because they do not affect the length or duration of Somerville's federal sentence. For this reason, Somerville cannot pursue  *Bivens* claims such as retaliation, in *this* habeas proceeding, 09-CV-68-KKC.

In his  "Motion For Leave  to File an Amended § 2241 Petition," Somerville asks to add additional "respondents" and claims in this § 2241 proceeding. Somerville states as follows:

---

[11]

Somerville is advised that if he files a separate civil action on the First Amendment claims, the filing fee for a civil action is $350.00, although a prisoner may seek pauper status. Additionally, before filing a lawsuit in federal court regarding conditions of confinement, federal law requires that a prisoner fully exhaust each and every such claim through the BOP's three-step administrative remedy procedure. *See* Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. 1997e(a );  *See Porter v. Nussle*, 534 U.S. 122 S.Ct. 983 (2002); *Lavista v. Beeler*, 195 F.3d 254, 256 (6th Cir. 1999).

16

"Petitioner seeks to amend the Caption of the original Petition and Prayer for Relief, including FEDERAL BUREAU OF PRISONS, AN AGENCY, HARLEY LAPPIN, DIRECTOR, as Respondents, to allow his claims under the Administrative Procedures Act in Ground Four to proceed similar to those in *Colton v. Ashcroft*, 299 F. Supp. 681 (E.D. Ky. 2004)."

[Record No. 4, p.1].

The only proper respondent in a § 2241 proceeding is the warden of the facility where the prisoner is confined. *See* 28 U.S.C. § 2242.  Likewise, 28 U.S.C. § 2243 provides that the writ or order to show cause is to be directed "to the person having custody of the person detained."  Here, Warden Dewalt is Somerville's custodian within the meaning of 28 U.S.C. §§ 2241-43, and is the only appropriate respondent to a writ of habeas corpus.  *Guerra v. Meese*, 786 F.2d 414, 416-417 (D.C. Cir. 1986); *Belliterri v. U.S. Board of Parole*, 541 F.2d 938, 948 (2d Cir. 1976).

Somerville's essentially seeks to assert a Fifth Amendment *Bivens* claim based on an alleged violation of the Administrative Procedure Act, 5 U.S.C. § 702. The Court will deny Somerville's Somerville's motion to amend his § 2241 Petition [Record No. 4].

<u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** as follows:

(1)     Petitioner Norman David Somerville's"Motion for Leave to File an Amended § 2241 Petition"[Record No. 4] is **DENIED** as **MOOT**.

(2)     Petitioner Norman David Somerville's "Motion for Temporary Restraining Order and Motion for Preliminary Injunction" [Record No. 5] is **DENIED**.

(3)     Petitioner Norman David Somerville's petition for a writ of habeas corpus

17

Record No. 2] is **DENIED.**

  (4)  This action is **DISMISSED WITHOUT PREJUDICE**, *sua sponte,* from the Court's active docket.

  (5)  Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondent.

  Dated this 11th day of March, 2009.

<br/>

Signed By:

***Karen K. Caldwell***

**United States District Judge**