UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-CV-68-KKC

NORMAN DAVID SOMERVILLE                                         PETITIONER

VS:             **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT, ET AL.                                       RESPONDENTS

The Court considers the "Motion to Alter or Amend Judgment" [Record No. 8] filed by Norman David Somerville, the *pro se* petitioner herein. Somerville is confined in the Federal Correctional Medical Center which is located in Lexington, Kentucky ("FMC-Lexington").

Somerville seeks relief, under Fed. R. Civ. P. 59(e), from the Memorandum, Opinion and Order ("the Opinion and Order") and Judgment entered in this action on March 11, 2009 [Record Nos. 6 and 7].

PROCEDURAL HISTORY
1. The § 2241 Petition [Record No. 2]

In his § 2241 petition, Somerville demanded to be placed in a Residential Re-entry Center ("RRC") located in North Carolina, not a more restrictive a more restrictive Comprehensive Sanction Center ("CSC") located in Michigan.[1] Somerville sought an emergency Order from this Court which would have directed the Bureau of Prisons ("BOP") to immediately

---

[1] In his current motion, Somerville clarifies that he is not even being considered for placement in a Michigan CSC. He states that "the 2241 is solidly grounded on claims that ALL halfway house placement of any kind was denied in February 2009 after previously being in place." [*See* Motion, Record No. 8, p.8]. The Court disagrees that Somerville was not seeking RRC placement in North Carolina his § 2241 petition, it is irrelevant to the disposition of this motion.

order him to be placed in an RRC located in North Carolina.[2] Somerville argued that BOP's refusal to place him in a North Carolina RRC violated his right to due process of law, guaranteed by the Fifth Amendment of the United States Constitution.

Somerville further argued that in denying him placement in an unrestricted RRC in North Carolina, the BOP and the FMC-Lexington staff violated the Ex Post Facto Clause of the United States Constitution, Art. I, § 10, cl.1. Specifically, he argued that although he was sentenced in 2005, the prison staff improperly applied the provisions of the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657, to him in 2008 when the issue of his pre-release custody arose.[3]

2. The Opinion and Order [Record No. 12]

In the Opinion and Order, and Judgment, the Court dismissed Somerville's § 2241 petition. First, the Court concluded that Somerville had failed to administratively exhaust his claims as required by the provisions of the Administrative Remedy Program, 28 C.F.R. § 542.10-19. The Court rejected Somerville's argument that exhaustion was futile, noting that Somerville had stated in the massive exhibits attached to his § 2241 petition that he had in fact begun the administrative exhaustion process by filing a BP-9 "Request for Administrative Remedy" with Warden Dewalt on December 30, 2008 [*See* Opinion and Order, Record No. 6, pp. 6-8].[4]

Second, the Court concluded that in light of the facts and the applicable case law, issuing

---

[2] "RRCs" were previously known as Community Corrections Centers ("CCC's)."

[3] The Second Chance Act requires early release determinations to be made on an individual basis based upon criteria provided in 18 U.S.C.. § 3621(b). After the enactment of the Second Chance Act, the BOP rescinded its old policies previously in place under 28 C.F.R. §§ 570.20 and 570.21 and adopted the criteria as provided by § 3621(b).

[4] The Court further noted that Warden Dewalt denied the BP-9 request on January 9, 2009, [*Id*., p. 7, referring to § 2241 Petition, Record No. 2-3, p. 27].

2

a Preliminary Injunction preventing the BOP from transferring Somerville to a Michigan CSC was not warranted [*Id.*, pp. 8-15]. Summarized, the Court determined that Somerville had no protected liberty interest in placement of an RRC of his choosing [*Id*]. In reaching that conclusion, the Court further concluded that Somerville's reliance of the Ex Post Facto Clause did not support his claims [*Id.*, p. 9].

The Court explained to Somerville that under both prior BOP regulations and the Second Chance Act, the BOP was required only *to consider* a federal inmate for placement in an RRC, and that the BOP was not *required* to place an inmate in an RRC for any specified period of time. Citing *Demis v. Lappin*, now reported at 558 F.3d 508 (6th Cir., 2009), the Court rejected Somerville's argument that he suffered *ex post facto* harm in by reason of the new law. The Court noted that the Second Chance Act was far more favorable and beneficial, to federal prisoners seeking a longer RRC placement than prior, than prior BOP regulations had been.

The Court explained that because of the Second Chance Act, the BOP is now allowed, although not *required*, to consider an inmate for extended placement in an RRC (12 months). This is in comparison to the shorter period as allowed by prior BOP regulations, which permitted at the most only a 6- month placement in an RRC [*Id.*].[5]

2. Somerville's "Motion to Alter or Amend" [Record No. 8]

Somerville has filed an eighteen-page motion with respect to his RCC placement. In that motion, he provides a day-to-day recitation of events, exchange of memoranda and conversations between him and prison staff, all of which he alleges transpired at FMC-Lexington between

---

[5] The Court disposed of other claims asserted by Somerville, which are not at issue in his current Rule 59(e) motion.

October of 2008 and the present.

Somerville reiterates that he was promised an RRC placement in the fall of 2008 but that in retaliation for grievances he filed against FMC-Lexington staff, he was denied RRC placement of any kind in February of 2009. Citing *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 689 (E. D. Ky. 2004), Somerville contends that because he is challenging the BOP's application of its regulation to him, exhausting his administrative remedies would be futile. He further continues to argue that the prison staff's application of provisions of the Second Chance Act to his request for RRC placement violated the Ex Post Facto Clause.

## DISCUSSION
### 1. Standards for Rule 59(e) Motion

Under Rule 59(e), there are three grounds for a court to amend its judgment. Amendment is warranted only if the movant shows "(1) a clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law." *Owner-Op. Indep. Drivers Ass'n v. Arctic Express*, 288 F. Supp. 2d 895, 900 (S. D. Ohio 2003) (citing *GenCorp v. AIU*, 178 F.3d 804, 834 (6th Cir. 1999)). Reconsideration may also be appropriate where the court fundamentally misapprehended the nature of the issues raised by the parties. *Cf. Braxton v. Scott*, 905 F. Supp. 455 (N.D. Ohio 1995).

Conversely, a motion for reconsideration is not a vehicle to re-hash old arguments, or to proffer new arguments or evidence that the movant could have brought up earlier. *See Smith v. Mt. Pleasant Pub. Schs.*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003) (citing *Sault Ste. Marie Tribe v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)). *See, e.g., Prater v. Con-Rail*, 272 F. Supp. 2d 706, 710 (N.D. Ohio 2003) (denying reconsideration of order excluding physician's

testimony, as movant could have presented evidence of his qualifications in opposing motion in limine but failed to do so). For the following reasons, the Court will not set aside the Opinion and Order in this case.

### 2. Application of Standards to the Facts
#### A. Failure to Exhaust § 2241 Claims

Reconsideration of the Opinion and Order is not warranted. This Court has recently ruled that § 2241 claims involving the Second Chance Act must be fully exhausted in accordance with 28 C.F.R. Section 542. *See Cox v. Hogsten*, 2009 WL 233884, *2 (E. D. Ky., January 30, 2009) (Hon. Gregory F. Van Tatenhove, presiding) (Slip Copy).

Other district courts have recently considered whether requiring a prisoner to pursue all of the BOP administrative remedies, prior to asserting a claim under 28 U.S.C. § 2241, is required with respect claims concerning RRC placement and the Second Chance Act. They have concluded that exhaustion is required. *See Schlenkert v. Davis*, 2009 WL 793097, *1 (D. Colo., March 20, 2009) (Slip Copy) (where the prisoner argued that the BOP failed to use the correct law to decide his community corrections placement in accordance with the Second Chance Act, district court determined that the petitioner's speculation of futility did not excuse his failure to exhaust); *Sawyer v. Cruz*, 2009 WL 703856, * 1 (D. Minn., March 16, 2009) (Slip Copy) (where prisoner filed § 2241 petition prior to completing exhaustion process, claiming that BOP had failed to grant him maximum amount of community or home confinement allowed under the Second Chance Act, Magistrate Judge recommended that the petition be dismissed without prejudice for failure to exhaust administrative remedies); *United States v. Bardasian*, 2009 WL 605788, *4 (C. D. Cal., March 6, 2009) (Not reported in F. Supp. 2d) ("Bardasian has not

exhausted his administrative remedies regarding the BOP's implementation of the Second Chance Act . . . Because the Petitioner still has remedies available within the BOP, his motion to vacate, set aside, or correct sentence by a person in federal custody under 28 U.S.C. § 2241 cannot be brought at this time."); and *Stump v. Stansberry*, 2009 WL 455294, *1 (E. D. Va., February 24, 2009) (Slip Copy) (prisoner failed to demonstrate that it would be futile for him to pursue his administrative remedies for his claim that he was not considered for placement in an RRC as required by the Second Chance Act).[6]

This Court agrees with the conclusions of its sister courts. The "futility" exception which Somerville invokes applies in certain narrowly-defined circumstances, such as where there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider."*James v. United States Dept. of Health and Human Services*, 824 F.2d 1132, 1139 (D.C.Cir.1987).

The regulation at issue is comparatively new, as is the BOP's enforcement of it, and there is simply not yet a sufficiently-established record of the BOP's enforcement policies regarding the issue. The Court is not yet prepared to conclusively hold that the BOP's position on the matter is fixed and inflexible. For that reason, the Court again concludes that Somerville has failed to provide a legally-sufficient justification for his failure to exhaust administrative

---

[6] Considerations of space prevent the Court form listing in detail other decisions which reach the same result, but *see also Dyer v. Mukasey*, 2008 WL 5156111 (N. D. Ill., December 8, 2008) (Slip Copy) (finding that although the BOP conformed to the requirements of the Second Chance Act in making its decision regarding the petitioner's six month half-way house placement, petitioner failed to pursue his administrative remedies, thus defeating any futility exception)

6

remedies, and the petition must be denied as prematurely brought.

## B. Claims Were Examined but Failed on the Merit

Next, the Court will assume for argument's sake that exhaustion is not, and was not, a barrier to Somerville asserting his claims via a § 2241 petition. Even making that assumption, Somerville's Rule 59(e) arguments ignore one vital fact.

The record reveals that in the Opinion and Order, the Court actually examined the merits of Somerville's claims. The Court reviewed and evaluated the merits because Somerville requested, and demanded, an emergency injunctive Order requiring the BOP to place him in a North Carolina RRC, although he now disclaims that this issue was placement in an RRC located in North Carolina. Regardless of that issue, the Court reached the proper result after considering whether - -on the merits - - Somerville was entitled to injunctive relief.

In the Opinion and Order, the Court discussed, at length, the specific fact which led Warden Dewalt to reject Somerville as a candidate for RRC placement. Those factors included his extensive criminal history and conviction arising from the use and possession of guns and ammunition. The Court further emphasized the discretionary nature of a decision under both the Second Chance Act *and* its predecessor regulations. After consideration of both Somerville's documented history and the five factors enunciated in the statute which governs prisoner placement, 18 U.S.C. § 3621(b), the Court concluded that Warden Dewalt's decision was valid and substantiated, in the context of the request for emergency injunctive relief.

The Court will not reconsider that determination. Although the BOP's regulation implementing the Second Chance Act, 28 C.F.R. § 570.21, is of recent vintage, other courts have already upheld its validity against challenges. *See, e.g., Miller v. Whitehead*, 527 F.3d 752, 757

7

(8th Cir. 2008) (upholding regulation's "extraordinary justification" requirement for RRC placement exceeding 6 months as permissible rulemaking to address certain issues of general applicability as permitted under *Lopez v. Davis*, 531 U.S. 230 (2001)).

In *Daraio v. Lappin*, 2009 WL 303995, *6-7 (D. Conn., February 9, 2009) (Slip Copy), the prisoner, like Petitioner Somerville, was also unhappy that the Warden had applied the provisions of the Second Chance Act to her request for RRC placement.[7] In *Daraio*, the district court upheld the BOP's refusal to afford the prisoner the extended RRC placement she sought.

In Somerville's case, he claims that FMC-Lexington staff inappropriately applied the five criteria of the Second Chance to his request for RRC placement, and that the application of the law adversely affected Warden Dewalt's decision to place him in *any* RRC. In *Daraio*, the prisoner argued that she should have been considered for *longer* placement in an RRC by reason of the more generous Second Chance Act. Regardless of the slight factual differences, the discussion and holding in *Daraio* provides a persuasive and instructive analysis of the issue.

Relevant to Somerville's case, the *Daraio* Court discussed the discretionary and non-mandatory nature of the decision as to whether, where and when to designate an inmate for RRC placement under the Second Chance Act. The pertinent discussion is set forth below:

> Furthermore, the BOP retains discretion under the Second Chance Act to decide whether and when an inmate should be placed at an RRC, provided such pre-release confinement is practicable and the BOP considers the statutory factors. See § 3624(c)(1) ("The Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for [her] reentry ... into the community."); see also § 3621(b) ("The Bureau may at any time, having

---

[7] Unlike the instant proceeding, however, the Prisoner Daraio had fully exhausted her § 2241 claims relating to RRC placement.

8

regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another." (emphasis added)); *Lopez v. Davis*, 531 U.S. 230, 241, 121 S.Ct. 714, 148 L. Ed.2d 635 (2001) ("Congress' use of the permissive 'may' ... contrasts with the legislators' use of a mandatory 'shall' in the very same section. Elsewhere in § 3621, Congress used 'shall' to impose discretionless obligations...."); *Levine* [*v. Apker*], 455 F.3d 71, 80 [(2d Cir. 2006)] ("Congress's use of the language "may designate" in this provision seemingly endows the BOP with "broad discretion."). As the Second Circuit explained in *Levine*, " 'the statute indicates that the BOP may place a prisoner where it wishes, so long as it considers the factors enumerated in § 3621.' " *Levine*, 455 F.3d at 82 (quoting *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 245 (3d Cir.2005)).

In addition to the language Congress chose, the legislative history of the Second Chance Act also reveals Congress' intent to place RRC placement decisions within the discretion of the BOP:

[Section 251] ... afford[s] the Director of the Bureau of Prisons the discretion to place an offender in a halfway house for up to 12 months prior to the offender's release date.

[Section 251] also amends section 3561 of title 18, United States Code, to prohibit Federal judges from sentencing defendants to a community correction facility. The section reiterates that the Bureau of Prisons has sole and exclusive authority to designate the facility where prisoners will serve a sentence and to order a transfer from one facility to another. In addition, the [BOP] has the sole and exclusive authority to determine when and if a prisoner should be transferred or designated to a community correctional facility, which typically occurs near the end of the prisoner's sentence. . . .

H. Rep. No. 110-140 * 20, reprinted in 2008 U.S.C.C.A.N. 24, *38 (May 9, 2007); see *Levine*, 455 F.3d at 82 ("Given the clarity of the text, we need not turn to legislative history. Such an inquiry, however, supports our reading" of the act.). In this case, the BOP reviewed Ms. Daraio's reentry needs in accordance with the Second Chance Act, considered each of the statutory factors set forth in § 3621(b), and determined that 180 days of community confinement was sufficient to afford her a reasonable opportunity to prepare for reentry.

**Although Ms. Daraio is dissatisfied with the BOP's resolution of her request, it is apparent that the BOP reviewed her request for an immediate RRC placement in accordance with the requirements of the Second Chance Act after considering the statutory factors set forth in § 3621(b). Warden Zickefoose's response to Ms. Daraio's formal administrative remedy states as follows: "Following passage of the Second Chance Act in April 2008, the**

9

> **[BOP] and FCI Danbury undertook a re-consideration of all inmates' 'end of sentence' RRC placements under the new criteria established by the Second Chance Act including consideration for placement of up to 12 months."** . . . **Warden Zickefoose stated that these determinations took into account the statutory factors as well as other factors including, but not limited to, individual needs, disciplinary records, and existing community resources.** . . .
>
> Similarly, the Regional Director recognized Ms. Daraio's asserted need to "work and support [her] orphaned, learning disabled, minor son." . . . Despite acknowledging Ms. Dario's {sic} special circumstances, the Regional Director denied Ms. Daraio's appeal in a Response dated December 12, 2008 that states as follows: "Staff considered the fact that you have family support, sufficient financial resources and marketable job skills in the community [in their determination of 180 days' RRC placement]. Your situation was reviewed again under the criteria of the Second Chance Act, and it was determined the above RRC placement period was appropriate to provide you with the best opportunity to successfully transition back into the community." Id. The Regional Director's Response recognized Ms. Dario's family circumstances-circumstances that have since changed-but denied her request for relief.
>
> The Court recognizes Ms. Daraio's continued disagreement with the BOP over whether she has shown "extraordinary circumstances" and should therefore be afforded more than 180 days of pre-release community confinement at an RRC. However, she has presented the Court with no arguable legal basis for disturbing the BOP's discretionary determination following its consideration of the statutory factors. As a result, the Court denies Ms. Dario's request for relief under § 2241 and the Second Chance Act.

*Daraio v. Lappin*, 2009 WL 303995, at 6-7 (Emphasis Added).

In Somerville's case, the Court expressed essentially the same detailed analysis in the Opinion and Order. This Court is guided by *Daraio* in denying Somerville's motion to reconsider the Opinion and Order. For the reasons set forth in *Daraio*, the Court will not set aside, reconsider, vacate, alter or amend the Opinion and Order. As noted, the dismissal of the instant § 2241 petition was without prejudice to Mr. Somerville administratively exhausting his claims, which he is free to do.

CONCLUSION

Accordingly, **IT IS ORDERED** that Petitioner Norman David Somerville's "Motion to Alter or Amend Judgment" [Record No. 8] is **DENIED** as **MOOT**.

Dated this 1st day of May, 2009.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge